UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Sherye Epps d/b/a Sunshine Shoes, | ) | C/A No.4:16-cv-2747-BHH-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Midvale Indemnity Company, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on a Motion to Enforce Settlement filed by Defendant, Midvale Indemnity Company ("Defendant" or "Midvale"), ECF No. 37, which was referred to the undersigned when United States District Judge Bruce H. Hendricks granted the Motion to Withdraw as Attorney of then-counsel for Plaintiff Sherye Epps d/b/a Sunshine Shoes ("Plaintiff" or "Epps").[1] The undersigned conducted a hearing on November 14, 2017, at which Plaintiff appeared pro se and Defendant appeared through its counsel of record, Jeffrey Kull.[2] As discussed more fully within, at that hearing the undersigned considered Plaintiff's questions about the settlement at issue, explaining that the agreed-to settlement involves only the above-captioned litigation and that the release Plaintiff is required to sign before receiving her check is appropriate based on the terms the parties agreed to in writing on June 29, 2017. Having considered the documentary and testamentary evidence submitted to the court and provided at the hearing, as well as the additional filings of Plaintiff and Defendant related to the Motion to Enforce Settlement, the undersigned recommends Defendant's Motion to Enforce

---

[1] This matter was referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Local Civil Rule 73.02(B)(2)(e), D.S.C, which provides for all pretrial proceedings involving litigation by individuals proceeding pro se be referred to a United States Magistrate Judge. Because the pending motion is dispositive, the undersigned enters this Report for the district judge's consideration.

[2] Plaintiff's former counsel, James Moore, III and Scott Evans of Evans Moore, LLC, were present in the courtroom and, when asked by the court, provided background information regarding procedural history.

Settlement, ECF No. 37, be granted. If this recommendation is adopted, the settlement can be consummated and this matter will be ended.

I.      Factual and procedural background

A.      Filing in state court and removal to this court

Sunshine Shoes, a therapeutic shoe company of which Plaintiff is the sole proprietor, experienced property damage in September/October 2015 as the result of a significant storm and flooding. Plaintiff made a claim on her insurance policy that had been issued by Midvale. Midvale denied Plaintiff's claim, taking the position the policy did not cover the loss. Appearing through her former counsel, Plaintiff brought suit against Midvale for alleged breach of the contract of insurance between Midvale and Sunshine Shoes and for bad-faith refusal to pay a claim. Plaintiff filed her Complaint in state court on or about May 20, 2016.[3] While in state court, this matter had a case number of 2016-CP-21-1243 ("state-court action"). The state-court action also included Bolt Insurance Agency ("Bolt") as a Defendant. *See* ECF No. 1-1. http://publicindex.sccourts.org/Florence/PublicIndex/CaseDetails.aspx?County=21&CourtAgency=21 002&Casenum=2016CP2101243&CaseType=V&HKey=516787112654872715381488011679716588 43120119541115011810110879998779116122437110650701048471107189 (last visited Dec. 4, 2017).

On July 25, 2016, a Stipulation of Dismissal was filed in state court dismissing Bolt from the matter. ECF No. 1-2.

On August 5, 2016, Defendant removed the matter to this court based on the court's jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). ECF No. 1. Jurisdiction pursuant to 28 U.S.C. § 1332, often called diversity-of-citizenship jurisdiction, requires complete diversity of citizenship between

---

[3] In this Report, the court may refer to actions taken by Plaintiff's former counsel as having been done by Plaintiff. The court recognizes that in these instances Ms. Epps may not have actually performed the action but that the action was done on her behalf.

plaintiff and defendant and that the amount in controversy exceed $75,000. 28 U.S.C. § 1332. As required when a case is removed, counsel for Defendant set out the bases for § 1332 jurisdiction, noting that Plaintiff and remaining-Defendant Midvale are citizens of different states. Notice of Removal ¶ 3, ECF No. 1. To support Defendant's assertion that the amount in controversy exceeded $75,000, Defendant provided the court with Plaintiff's discovery responses in which Plaintiff declined to agree that her potential damages would be no more than $75,000. ECF No. 1-3.[4] Defendant's Notice of Removal also included Midvale's Answer to the Complaint, which had been filed while the matter was still in state court. ECF No. 1-4.

Upon filing in this court, the matter was initially assigned to United States District Judge R. Bryan Harwell, with a civil action number of 4:16-cv-2747-RBH. However, On August 10, 2016, the matter was reassigned to Judge Hendricks, which gave it the current civil action number of 4:16-cv-2747-BHH.

Upon removal Defendant gave written notice to the clerk of the state court (in the Florence County Court of Common Pleas) as required by 28 U.S.C. § 1446. *See* ECF No. 9, 9-1 (acknowledgement of the filing of notice of removal signed by Clerk of Court, Florence County on August 15, 2016). Section 1446 provides that the filing of the Notice of Removal in Florence County ended the matter in that court. Section 1446 provides that "the State court shall proceed no further unless and until the case is remanded." 28 U.S.C. § 1446. Online docket information from the Florence County Court of Common Pleas (state court) indicates the matter was dismissed by removal to another court on August 15, 2016. *See* http://publicindex.sccourts.org/Florence/PublicIndex/CaseDetails.aspx?County=21&CourtAgency=21002&Casenum=2016CP2101243&CaseType=V&HKey=51678711265487271538148801167971658 8

---

[4] As discussed within, and as explained to Plaintiff at the November 14, 2017 hearing, allegations concerning the "amount in controversy" are provided only so that the court may determine whether it has jurisdiction pursuant to 28 U.S.C. § 1332. Such allegations and responses do not establish a specific value for the case.

43120119541115011810110879998779116122437110650701048471110‌7189 (last visited Dec. 4, 2017). Although online records also include a December 16, 2016 entry described as "ADR/Alternative Dispute Resolution (Workflow)," that entry indicates it was completed on August 15, 2016, the date of removal. Counsel for both parties attested at the hearing that no ADR was done in state court.

The undersigned notes that the state-court online records include entries indicating Sherye Epps made an undescribed "filing" in the closed state court action on November 14, 2017 and filed a "Motion/Rule Failure to Make Disclosure Sanctions" there on November 30, 2017. *See id.* Documents associated with these November 2017 filings are not available online. Nonetheless, the undersigned again advises Plaintiff that the state-court action was closed when the matter was removed to this court. As the state court no longer has jurisdiction over this matter, filings or activity there have no impact on this case.

B.      Pretrial scheduling and mediation requirement

Shortly after removal, Judge Hendricks issued a Conference and Scheduling Order and a Mediation Order on August 11, 2016. ECF Nos. 6, 7. These orders included deadlines and information routinely provided to civil litigants and their counsel. Judge Hendricks' Mediation Order included details and requirements for the court-ordered mediation. ECF No. 7.

Three times counsel for Plaintiff and counsel for Defendant agreed to and were granted extensions of the deadlines for mediation, discovery, and related deadlines contained in the court's scheduling orders. *See* ECF Nos. 15, 23, 27. The most recent scheduling order included a mediation deadline of August 7, 2017. ECF No. 27.

C.      Mediation and order of dismissal

On June 29, 2017, with Karl A. Folkens serving as mediator, the parties mediated this matter to a full resolution, and so advised the court on June 30, 2017. On June 29, 2017, the parties executed a

"Mediated Settlement Agreement," ("MSA"). *See* ECF No. 37-1. The MSA includes the caption of this litigation and sets out the parties' agreement—including information about the sum to be paid by Defendant, the release that Plaintiff will be required to sign, as well as information about the payment of mediation and the logistics of dismissing the matter in court. *See* ECF No. 37-1 (quoted in its entirety below). The MSA was signed by Plaintiff; her attorneys, Moore and Evans; her mother, Mary Ann Epps;[5] defense counsel J Kull; and another party whose signature is not legible. At the parties' request, Judge Hendricks issued a one-page Order of Dismissal on July 5, 2017. ECF No. 29. In the Order, Judge Hendricks indicated the parties had advised the court this matter had been settled and dismissed this action "without costs and without prejudice." ECF No. 29. Further, the Order provided:

> If settlement is not consummated within sixty (60) days, either party may petition the Court to reopen this action and restore it to the calendar. Rule 60(b)(7), F.R. Civ. P. In the alternative, to the extent permitted by law, either party may within sixty (60) days petition the Court to enforce the settlement.

Order, ECF No. 29 (citing *Fairfax Countywide Citizens v. Fairfax Cnty.*, 571 F.2d 1299 (4th Cir. 1978)).

    D.    Matter reopened; Plaintiff's counsel relieved

Although still represented by counsel at the time, on July 28, 2017, Plaintiff filed a pro se motion asking that the court grant a six-month release from all creditors. *See* ECF Nos. 30-34. That motion, which was docketed as a Motion for Extension of Time, made it clear to the court that the agreed-to settlement had not been consummated. *See* ECF No. 39. On August 3, 2017, Plaintiff's counsel moved to withdraw from representing her, noting communication issues between counsel and client. Plaintiff's then-counsel also noted Plaintiff had filed for Chapter 13 bankruptcy. ECF No. 34. "Based on Plaintiff's bankruptcy filing and her desire not to sign the General Release, no

---

[5] The MSA does not identify Mary Ann Epps as Plaintiff's mother. One of Plaintiff's recent filings includes a letter from Mary Ann Epps, who identifies herself as Plaintiff's mother and indicates she was present at the mediation. *See* ECF No. 86-1. The court notes that this letter raises a point about how many copies of papers Epps received at the mediation but finds this point does not impact the recommended ruling herein.

disbursements have been made from [Plaintiff's] settlement proceeds." *Id.* at 2. Counsel advised they were maintaining the check in their trust account pending resolution of issues concerning the settlement. *Id.* On August 10, 2017, Defendant filed the Motion to Enforce the Settlement now under consideration, ECF No. 37.

Based on these filings, Judge Hendricks reopened this matter and conducted a hearing on September 19, 2017. Plaintiff; her then-counsel Moore and Evans; and defense counsel Kull attended that hearing. *See* ECF No. 43. For reasons discussed on the record during that hearing, Judge Hendricks granted the motion of Plaintiff's counsel to withdraw from representing her. Because this meant Plaintiff would be proceeding pro se, the matter was assigned to the undersigned magistrate judge for consideration of pretrial matters. Judge Hendricks declined to rule on Defendant's Motion to Enforce Settlement at that time. *Id.*

E.      Proceedings since referred to the undersigned

In accordance with the court's usual practice when pro se litigants are involved, the undersigned issued an order on September 21, 2017, advising Plaintiff of pleading and practice rules applicable to pro se litigants. ECF No. 50. On September 27, 2017, the undersigned instructed Plaintiff to file a written response to Defendant's Motion to Enforce Settlement no later than October 13, 2017. ECF No. 52. Plaintiff provided some documentation to the court that was docketed on October 3, 2017, ECF No. 58, although those documents concern an unrelated matter. On October 4, 2017, Plaintiff requested that the court appoint counsel for her and that she be given an extension of time within which to respond to the Motion to Enforce Settlement. ECF No. 58. The court granted Plaintiff's request for an extension, advising her to respond to the motion by November 3, 2017. Plaintiff's request for appointed counsel was denied. ECF No. 56.

Since then, Plaintiff has submitted voluminous filings to the court in support of her questions about the settlement. *See* ECF Nos. 60, 61, 62, 67, 68, 69, 73, 76, 77, 78, 83, 85, 86, 88 (filings and

attachments, some duplicative, totaling over 1500 pages).[6] Defendant has provided additional information in response to Plaintiff's filings and in further support of the Motion to Enforce Settlement. *See* ECF Nos. 42, 59, 74, 75. The undersigned conducted a hearing on the Motion to Enforce Settlement on November 14, 2017.

On November 20, 2017, Plaintiff submitted another supplemental filing, which is docketed as a Motion for Funds, Package Settlement and Disbursement, and to Remove Bond Ride. Plaintiff has since filed several supplements in support of that Motion. ECF Nos. 86, 87, 88. The information contained in ECF Nos. 86–88 reiterates issues raised in Plaintiff's other filings or concerns unrelated matters. Accordingly, the undersigned denied the Motion. ECF No. 89.

II.     Standard in considering Motion to Enforce Settlement

"[D]istrict courts have inherent authority, deriving from their equity power, to enforce settlement agreements." *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 540 (4th Cir. 2002). In order to exercise this power, a district court "(1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions." *Id.* at 540–41. In making these determinations, courts generally rely on standard contract principles. *Topiwala v. Wessell,* 509 F. App'x 184, 186 (4th Cir. 2013). The first step is to look to "the objectively manifested intentions of the parties," to determine whether there was a meeting of the minds. *Moore v. Beaufort Cnty.*, 936 F.2d 159, 162 (4th Cir. 1991). To the extent "there is a factual dispute over the existence of an agreement, over the authority of attorneys to enter into the agreement, or over the agreement's terms, the district court may not enforce a settlement agreement *summarily." Hensley*, 277 F.3d at 541 (emphasis in original) (footnote omitted). Instead, the district court must hold a plenary evidentiary hearing to resolve the dispute. *Id.* (quoting *Millner v. Norfolk & W. Ry. Co,* 643 F.2d 1005, 1009 (4th Cir.1981)). In the event

---

[6] Several of Plaintiff's filings, ECF Nos. 83, 85, 86–88 were submitted after the November 14, 2017 hearing. These filings need not be considered herein. In any event, the undersigned's brief review of these filings indicates they contain no information that would impact the recommendation within.

a settlement "has been reached and its terms and conditions can be determined, the court may enforce the agreement summarily as long as the excuse for nonperformance of the agreement is 'comparatively insubstantial.'" *Hensley*, 277 F.3d at 540 (quoting *Millner,* 643 F.2d at 1009) (internal citation omitted). "[H]aving second thoughts about the results of a settlement agreement does not justify setting aside an otherwise valid agreement." *Young v. F.D.I.C,* 103 F.3d 1180, 1195 (4th Cir. 1997).

III.    Analysis

The only case at issue here, and thus the only litigation that is the subject of the Mediation Settlement Agreement (MSA) signed by Plaintiff and Defendant, is *Epps v. Midvale*, Civil Action No. 4:16-cv-02747. Plaintiff has correctly noted that at one time the case number included the initials "RBH" at the end. Those initials represent the United States District Judge to whom the matter was initially assigned. See, e.g., ECF No. 30 at 1 (listing both 4:16-cv-2727-BHH and 4:16-cv-2727-RBH). When reassigned to Judge Hendricks, the initials "BHH" were appended to the end of the case number. Similarly, when this matter was referred to the undersigned, the initials "KDW" were also added to the case number. The case number in this court has never changed, and any change in initials does not change what this case entails. Further, this case is the same case as the one initial brought in the Florence County Court of Common Pleas and given the case number 2016-CP-21-1243. As noted above, when the matter was removed the case became active in this court and the matter was dismissed in the Court of Common Pleas.

A.    The Policy

This summary of Plaintiff's claims and Defendant's defenses in this matter is provided for clarity and for the reader's information. The court's role in considering the Motion to Enforce Settlement does not include making specific findings of fact or conclusions of law concerning the relative merits of Plaintiff's claims and Defendant's defenses. *See generally Hensley*, 277 F.3d at 542 (noting court's role in considering such a motion); *Liberty Media Holdings, LLC v. FF Magnat Ltd.*,

No. 2:12-CV-01057-GMN, 2013 WL 1187520, at *2 (D. Nev. Mar. 19, 2013) (noting court's finding that parties "had reached an enforceable settlement agreement" was not a resolution of the case's merits).

Plaintiff's Complaint concerns one policy of insurance: commercial insurance coverage issued by Midvale to Sunshine Shoes as policy number BPP1000782 (the "Policy"). Compl. ¶ 6, ECF No. 1-1. Plaintiff attached a copy of the Policy declarations as exhibit 1 to her Complaint. Ex. 1 to Compl., ECF No. 1-1. The Midvale Business Owner's Policy ("BOP") was effective from November 17, 2014 until 12:01 AM on November 17, 2015. ECF No. 1-1 at 9. The Policy's Location Address is 4001 E. Palmetto St., Florence, SC 29506. The policy indicates the Location Coverage applies to all buildings at that address. *Id.* The Policy Coverage is listed as follows:

*Liability Coverage*
Liability and Medical Expenses (per-occurrence limit/annual aggregate limit): $1,000,000/$2,000,000
Damage to Premises Rented to You: $50,000
Medical Expenses (per person): $5,000

*Property Coverage*
Business Income & Extra Expense: 12 months actual loss sustained
Personal Property Off-Premises:       $10,000 with a deductible of $500
Accounts Receivable (on premises/off premises): $10,000/$5,000 with $500 deductible
Valuable Papers & Records (on premises/off premises): $10,000/$5,000 with $500 deductible
Electronic Data: $10,000 with $500 deductible
Interruption of Computer Operations: $10,000 with $500 deductible
Fire Department Service Charge: $10,000
Forgery or Alteration: $2,500 with $500 deductible.

Policy Declarations, ECF No. 1-1 at 9-10.

In the Complaint, Plaintiff's disputed claim references the $50,000 [liability] coverage for "loss of rental property," the $10,000 business property coverage, and the "actual-loss-sustained" coverage related to the loss of 12 months of business income. Compl. ¶ 8. In its Answer, Midvale disputes Plaintiff's claim based on exclusions in the Policy. *See* ECF No. 1-1 at 14-16 (Midvale's letter to Plaintiff denying coverage for her claim). Midvale referenced limitations in the Businessowners

Coverage Form (indicating Midvale's Policy did not pay for loss of or damage to a building's interior or to personal property "caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not," except in specific situations not at issue here). *Id.* Midvale found coverage did not exist based on the water exclusion. *Id.*; *see also* Midvale Answer ¶¶ 10, 14-15, ECF No. 1-4. Midvale also notes that no claim has been made against Plaintiff as to loss or damage to rental property and noting the $50,000 loss-of-rental-property coverage referenced in the Complaint is inapplicable because that coverage is liability coverage. Answer ¶ 8.

B.     The executed Mediated Settlement Agreement and the proposed Release

On June 29, 2017, with Karl A. Folkens serving as mediator, the parties mediated this matter to a full resolution, and so advised the court on June 30, 2017. On June 29, 2017, the parties executed a "Mediated Settlement Agreement," ("MSA"). *See* ECF No. 37-1. The MSA includes the caption of this litigation and indicates as follows:

As a result of mediation, the parties have agreed as follows:

1. Defendant shall pay to Plaintiff the sum of $30,000.00 as soon as practicable, but no later than 20 days.
2. Plaintiff will execute a release releasing the Defendant, its employees, agents, attorneys, third-party adjusters, and related parties from all claims and damages. Plaintiff hereby agrees to, and accepts responsibility to pay, all valid liens, subrogation claims, and/or assignments relating to this claim, if any.
3. The release will include a comprehensive contractual confidentiality provision for which the sum of $100.00 paid pursuant to paragraph 1 is allocated. The parties acknowledge that a more comprehensive general release will be executed incorporating the terms of this Agreement. The release will include a provision that this settlement cannot be construed as an admission of liability by the Defendant; the Defendant expressly denies all liability. The parties intend this for this Agreement to be enforceable by the Court, and if any material term is omitted, the Court shall determine what is reasonable rather than voiding this Agreement.
4. All parties authorize their respective attorneys to execute a dismissal with prejudice.
5. The parties shall equally divide the costs of the mediation two ways.

ECF No. 37-1. As noted above, the MSA was executed by Plaintiff; her attorneys Moore and Evans; her mother, "Mary Ann Epps"; defense counsel, J Kull; and another party whose signature is not legible.

It is undisputed that Defendant delivered the $30,000 settlement check to Plaintiff's then-counsel within 20 days of June 29, 2017. Mot. Enforce Settlement 1. Joshua Bohrer, Property Resolution Manager of Midvale's third-party administrator, Gallagher Bassett, has affirmed that a $30,000 check was issued by Gallagher Bassett on Midvale's behalf. The check was issued on July 6, 2017, and made payable to Evans Moore LLC as attorneys for Plaintiff. Bohrer Aff. ¶ 8, ECF No. 74-3. A copy of that check is available at ECF No. 30-1 at 7. In a July 19, 2017 email from Plaintiff's former counsel Moore to Plaintiff (and originally provided to the court by Plaintiff), counsel advised Plaintiff the check had been deposited into the Evans Moore trust account, where it was required to be held for at least five business days. ECF No. 30-1 at 13. Moore further advised Plaintiff he and Evans would go over the proposed release sent from Midvale and the settlement statement itemizing disbursement. *Id.*

Plaintiff has refused to sign the proposed release, raising various questions about whether it is what she had agreed to in the MSA. The proposed release includes the caption of this case, 4:16-cv-2747-BHH, as well as the parties' names—Sherye Epps d/b/a Sunshine Shoes and Midvale Indemnity Company—and provides:

The Plaintiff agrees as follows:

1. Defendant shall pay to Plaintiff the sum of $30,000.00 as soon as practicable, but no later than 20 days.
2. Plaintiff releases the Defendant, its employees, agents, attorneys, third-party adjusters, and related parties from all claims and damages. Plaintiff hereby agrees to, and accepts responsibility to pay, all valid liens. Subrogation claims, and/or assignments relating to this claim, if any.
3. The release includes a comprehensive contractual confidentiality provision for which the sum of $100.00 paid pursuant to paragraph 1 is allocated. The release cannot be construed as an admission of liability by the Defendant; the Defendant expressly denies all liability. The parties intend this for this Agreement to be enforceable by the Court,

and if any material term is omitted, the Court shall determine what is reasonable rather than voiding this Agreement.
4. All parties authorize their respective attorneys to execute a dismissal with prejudice.

Proposed General Release, ECF No. 30-1 at 51. The document includes a signature blank for Sherye Epp d/b/a Sunshine Shoes, as well as a space for her signature to be notarized. *Id*

C.     The settlement agreement should be enforced

Prior to the November 14, 2017 hearing, the undersigned reviewed the parties' voluminous filings. In summary, Plaintiff's questions and concerns about consummating the settlement focus on her questioning whether there were "supplemental funds" available to her under her Midvale Policy, whether Midvale had made a larger settlement on her claim without making the money available to her, and whether other litigation in which she is or was involved would also be subject to the proposed General Release she has thus far refused to sign.

As an initial legal matter, the undersigned has reviewed the MSA by Plaintiff and Defendant at the June 29, 2017 mediation and compared it with the proposed General Release that Plaintiff refused to sign, thereby necessitating Defendant's Motion to Enforce. The MSA and the proposed General Release are essentially the same documents. Accordingly, the undersigned recommends the Motion to Enforce Settlement be granted. The unambiguous language in the MSA, agreed to and signed by Plaintiff and her then-counsel, presents unambiguous terms. *See Hensley*, 277 F.3d at 540–41.

Further, at the November 2017 hearing, the court discussed Plaintiff's concerns with the settlement and sought clarification from Plaintiff as to some of those concerns. Importantly, at the end of the hearing, Plaintiff advised the court that she understood what the settlement was and was not about and indicated on the record that she agreed to the settlement memorialized in the MSA and would sign the proposed General Release so that this matter could be ended. Based on the evidence and argument of Plaintiff, her former counsel, and defense counsel, the undersigned is of the opinion that the settlement agreement should be enforced.

As stated above, the undersigned discussed Plaintiff's concerns during the hearing. Although not intended as a word-for-word transcript of the entire hearing, the following is provided to capture and discuss Plaintiff's concerns, in particular those Plaintiff discussed in detail at the hearing.

    1.    Amount of Policy/amount of settlement

In Plaintiff's filings and at the hearing, she believed she was entitled to more of a settlement than the agreed-to $30,000, arguing she had documentation to show that $55,000 had been paid to settle her claim with Midvale. *See, e.g.*, Policy Loss Run ECF No. 61-1 at 2. The Policy Loss Run document is dated July 12, 2017, is on Bolt Insurance letterhead, and references Plaintiff's Policy. The Policy Loss Run lists Plaintiff's "Claim Status" as "reopened,' the "Amount Paid" as $30,000 and the "Total Incurred" as $55,000. *Id.*

Plaintiff indicated at the hearing that she believed the $55,000 amount had been paid by Midvale and sent to the attorneys but was not being provided to her. Having reviewed Plaintiff's submissions and argument, the undersigned finds this concern of Plaintiff to be without merit. As explained by Kienstra, Midvale's third-party administrator for this claim, the $30,000 "loss" is the amount of the settlement with Plaintiff. The "Total Incurred" amount of $55,000 represents the total settlement with Plaintiff ($30,000) combined with the estimate of expenses incurred by Midvale to litigate Plaintiff's suit. Kienstra Aff. ¶ 8, 9, ECF No. 74-2.

Plaintiff indicated she believed there had been another alternative dispute resolution ("ADR") that had taken place in state court and that this ADR had taken place without her agreement or even her knowledge. Nothing in the record indicates any such separate ADR took place in this matter. Former counsel, Moore, and defense counsel, Kull, both stated on the record at the hearing that there had been no other settlement of Plaintiff's suit against Midvale and there had been no sort of agreement for a $55,000 settlement.

Plaintiff seemed to believe that Bolt Insurance Agency, which had been dismissed with prejudice while the case remained in South Carolina state court, was involved in a different settlement about which she had not been told.

Plaintiff has also questioned what the $30,000 settlement from Midvale was intended to cover and her apparent belief that the Midvale Policy provided more property-damage coverage than the $30,000 amount of settlement. Plaintiff indicated she had a Medicare/Medicaid bond for $300,000. When asked by the undersigned if she had a *Midvale Policy* for $300,000, she indicated she had a certificate of insurance. The record includes a "Certificate of Liability Insurance" issued by Bolt Insurance Agency, which lists the insured as Sunshine Shoes and the Certificate Holder as National Supply Clearinghouse in Columbia, SC. ECF No. 30-1 at 4. The insurer is AssureStart, not Midvale. This certification lists the amounts of *liability* coverage Sunshine Shoes held as of November 17, 2014, but does not include any information regarding insurance for property loss.

Plaintiff has also provided a copy of the Medicare DMEPOS Supplier Standards. ECF No. 62-1 at 10. One of the numerous standards is that a Medicare "supplier must have comprehensive liability insurance in the amount of at least $300,000 that covers both the supplier's place of business and all customers and employees of the supplier." *Id.* ¶ 10. Plaintiff was accredited for Fitter Services, Home/Durable Medical Equipment Services from September 4, 2013 through September 3, 2016. *See* ECF No. 62-1 at 8.[7]

As the court explained to Plaintiff, just because Plaintiff is required to maintain a certain level of liability insurance coverage does not transform the Midvale Policy into a Policy that provides more coverage than she purchased. Further, the requirement for liability insurance relates to insurance that Plaintiff might use if she were sued or found liable to a person or entity, which is not the case here.

---

[7] Plaintiff also references her status as a government vendor. However, that status changes nothing related to the settlement at issue. That Plaintiff was (or is) a Medicare vendor at one time does not matter to the insurance dispute/settlement at issue in this case.

Having considered Plaintiff's arguments and her paperwork concerning amounts of liability insurance she may have and the existence of a bond in favor of Medicare/Medicaid, the undersigned finds such arguments and information to be insufficient to excuse compliance with the agreed-to terms of the MSA. The undersigned plainly explained to Plaintiff that the other information she provided did not change the terms of the Midvale Policy at issue. The Policy includes property-loss coverage for $10,000. Only that portion of the Midvale Policy is at issue here.

Plaintiff also attempts to call into question the amount of the $30,000 agreed-to MSA by arguing she should be compensated for lost income under the Policy. However, the purpose of the court's review of the signed MSA is not to examine all matters about which Plaintiff may now have second thoughts. *Young,* 103 F.3d at 1195 (noting litigant's "second thoughts about the results" of a settlement agreement does not justify setting agreement aside).

Further, the court reviewed the voluminous documents submitted prior to November 14, 2017, and notes Plaintiff had not provided detailed information about all claimed lost income for which she sought coverage from Midvale. A letter provided by Plaintiff that her former counsel sent her in February 2017 reminded Plaintiff she carried the burden of establishing her damages and advised her she still needed to provide detailed evidence as to inventory loss and lost business income. *See* ECF No. 73-1 at 37–38. While the court also notes Plaintiff has included cryptic handwritten notes on the copy of the February 2017 letter, the notes do not change the recommendation within.

At the hearing, Plaintiff submitted what appears to be a form she filed with FEMA on October 8, 2015, seeking disaster assistance for damage to her residence. ECF No. 85-1 at 4; ECF No. 78-3 at 8. In response to one of the line items on the FEMA application, Plaintiff listed a "combined family pre-disaster gross income" of $35,000. *Id.* As the court explained to Plaintiff at the hearing, information she provided to a government agency in a different context would not be competent

evidence to support a lost-income claim. Similarly inadequate as proof of lost income is a line-item on a list of claimed damages prepared by Plaintiff and provided to the court the day before the hearing. *See* ECF No. 77-1 at 1 (indicating she had lost income of $105,000 in 2015, but not providing any further evidence of this amount).

Plaintiff also looked to the removal documents in this matter, believing they indicated someone had received or had agreed to pay $75,000 for her claim against Midvale. *See* Notice of Removal 2, ECF No. 1 (alleging the "amount in controversy" exceeds $75,000); Pl. Answer to Def. Req. Admit 1, ECF No. 1-3 (in which Plaintiff declines to indicate it will only *seek* damages in an amount less than $75,000). The court explained to Plaintiff that these allegations and answers relate to the jurisdictional amount required by 28 U.S.C. § 1332. They do not establish a specific value for this case and are in no way evidence that either Plaintiff or Defendant has determined it appropriate to pay $75,000 to settle this matter.

Plaintiff also pointed out that J. R. Murphy, Esquire and Hannah D. Stetson, Esquire—both of Murphy & Grantland, P.A.—were counsel of record for Midvale while this matter was in the Florence County Court of Common Pleas, but that in September 2016 Stetson left the case and in January 2017 Jeffrey Kull, Esquire entered an appearance on behalf of Midvale. This is accurate, and the record indicates that Stetson withdrew from representing Midvale because she left the firm of Murphy & Grantland, P.A. ECF No. 10. This change of one of the two defense counsel of record does not impact Plaintiff and does not make the settlement she agreed to in June 2017 invalid. This concern does nothing to suggest the MSA should not be enforced.

The only settlement amount agreed to be paid in this matter is the $30,000 agreed to between Plaintiff and Midvale in June 2017. The only policy of insurance involved in this case and the settlement at issue is the Midvale Policy.

2.	Subject matter of settlement

Plaintiff also expressed confusion about the breadth of the General Release she has been asked to sign. First, she looked to language in the MSA that indicates Plaintiff "will execute a release releasing the Defendant, its employees, agents, attorneys, third-party adjusters, and related parties from all claims and damages" and indicating that "a more comprehensive general release will be executed incorporating the terms of this Agreement." MSA, as quoted by Defendant in ECF No. 59 at 2. Plaintiff highlighted portions of this quoted language as the basis for her concern that this case and the proposed General Release suggested Plaintiff had a spouse and partners who would share in the settlement amount. Because Plaintiff is not married and is the sole proprietor of Sunshine Shoes, she felt the language was expanding the agreed-to settlement terms in impermissible ways. The court explained to Plaintiff that the language about "employees, agents, attorneys, third-party adjusters, and related parties" concerned *Defendant*, not Plaintiff. Furthermore, the court is aware that Plaintiff is a privately owned company, as indicated in her Rule 26.01 Interrogatory answer. ECF No. 8 at 1.

Plaintiff also questioned language in the initial Conference and Scheduling Order ("CSO") issued by the Judge Hendricks on August 11, 2016. CSO, ECF No. 6. *See* ECF No. 85-1 (page one of CSO handed up to the court by Plaintiff at hearing). Plaintiff noted the caption of the CSO listed "Sherye Epps d/b/a Sunshine Shoes" as "Plaintiff(s)." Plaintiff was concerned that the "(s)" added to "Plaintiff" indicated there was more than one Plaintiff involved in the matter. The court explained that the "(s)" often appears on scheduling orders for both a plaintiff or a defendant (as in this case) simply because some cases may have more than one. Similarly unfounded was Plaintiff's concern that the CSO's deadline for "initial" disclosures suggested there would be other disclosures of which she was unaware and that may have been made without her knowledge. The court explained to Plaintiff that Federal Rule of Civil Procedure 26(a) provides for several "disclosures" at various stages of the case— initial disclosure, disclosure of expert testimony, and pretrial disclosures. *See* Fed. R. Civ. P. 26(a).

Plaintiff was also concerned that the proposed General Release she was being asked to execute would have the effect of was expanding the MSA to impact other litigation in which she is involved, all for the agreed-to $30,000 settlement amount. Many of the papers filed by Plaintiff relate to these other matters including a foreclosure action brought against Epps in January 2017. 2017-CP-21-215. Records from the Florence County Clerk of Court indicate a judgment was obtained in that action in June 2017 and that a foreclosure sale took place in October 2017. http://publicindex.sccourts.org/Florence/PublicIndex/CaseDetails.aspx?County=21&CourtAgency=21 002&Casenum=2017CP2100215&CaseType=V&HKey=881141008476105787555101701008669110 6711210954521136966527687711071198011411989521031221167347888071107 (visited Dec. 4, 2017). Plaintiff also has provided a Consent Judgment in *United States of America v. HSBC N. Am. Holdings, Inc.*, Civil Action No. 16-0199 (D.D.C.), that seems to refer to a large settlement relating to mortgage practices. *See* ECF No. 58-2 at 1-12. Despite Plaintiff's reference to these matters and her filing of numerous documents related to the matters, there is no evidence that indicates, or even suggests, that these actions are in any way related to the agreed-to settlement with Midvale as to the insurance case before the court.

Plaintiff has also provided paperwork from a Chapter 13 bankruptcy that she filed on July 18, 2017. Bankruptcy court records confirm that Plaintiff filed a bankruptcy action and referenced this litigation in her filings concerning the settlement. However, the bankruptcy court dismissed the case on August 14, 2017. *See* Bankruptcy Court Order Dismissing and Closing Case, Case No. 17-03537-dd (Bankr. D.S.C.), available at ECF No. 42-1 at 1-2; *see also* Report of U.S. Trustee, available at ECF No. 73-1. Plaintiff voluntarily filed for bankruptcy protection after this matter was settled on June 29, 2017. Nothing in the proposed General Release or in any other paperwork provided suggests any link between the settlement of this insurance matter and what happened in the now-dismissed bankruptcy action she had filed.

Plaintiff also noted confusion about the changed initials at the end of the civil action number for this matter, noting it has changed from 4:16-cv-2747-RBH to 4:16-cv-2747-BHH to 4:16-cv-2747-BHH-KDW. As discussed above, these initials indicate the judge or judges assigned to the matter and do nothing to change the nature of the action itself.

Plaintiff has also referenced a 2007 Order filed in the District of South Carolina by then-Chief United States District Judge Joseph P. Anderson. *In re: Procedures in Civil Actions filed by Non-Prisoner Pro Se Litigants*, Misc. No. 3:07-mc-5015-JFA. *See* ECF No. 76-2 at 2-5 (copy of this Order as provided by Plaintiff in this matter). At the hearing, the court explained to Plaintiff that this order applies to all pro se litigants such as Plaintiff but does nothing to impact the character or subject-matter of the agreed-to settlement of her insurance dispute with Midvale.

After addressing Plaintiff's concerns, the court again assured Plaintiff that the only matter resolved in the MSA and the only matter covered by the proposed General Release is this case—her case against Midvale related to her October 2015 claims on the Midvale Policy. The undersigned also explained to Plaintiff that Midvale has always taken the legal position in this matter that the Policy at issue does not cover her claim because of the Policy exclusions. In spite of its belief that there is no coverage, Midvale agreed at mediation to settle the claim on the Policy rather than participate in further litigation over the matter. The court reminded Plaintiff that, if the proposed General Release is not signed and the settlement is not finalized Plaintiff would be required to establish that the Policy did cover her claim. If she were unable to do so, this case could be ended with Plaintiff receiving no settlement at all for her claim on the Policy.

The court concluded its discussion with Plaintiff by asking Plaintiff whether she now understood that the MSA and the proposed General Release cover only the Policy claim. Plaintiff indicated that she did understand. The court asked Plaintiff whether she still agreed to accept the

$30,000 settlement pursuant to the terms of the MSA. Plaintiff indicated that she did accept those terms.

Based on the foregoing, including the undersigned's review of Plaintiff's and Defendant's filings and information provided at the hearing, it is recommended that terms of the settlement agreed to in the MSA on June 29, 2017 be enforced.

C.      Fees and costs incurred by Plaintiff's former counsel payable from settlement proceeds

Plaintiff provided a copy of her fee agreement with Evans Moore, LLC—the law firm of her former counsel of record in this matter. Contingency Fee Contract for Legal Services, ECF No. 30-1 at 34-35. Plaintiff signed the Fee Contract on February 9, 2016. *Id.* at 35. Although this copy is not signed by Evans Moore, LLC, the authenticity of this as the completed agreement has not been challenged. Under that Fee Contract, Plaintiff agreed to pay Evans Moore 33 1/3% of any settlement obtained prior to a lawsuit being filed, and 40% of any settlement, verdict, or other recovery obtained after suit was filed. *Id.* at 34. The Fee Contract also provides that if Evans Moore withdraws from representing Plaintiff a "charging lien" is immediately assigned by Plaintiff to Evans Moore. *Id.* at 34-35. The charging lien is agreed to include reimbursement for fees incurred or advanced by Evans Moore in representing Plaintiff as well as reasonable attorney fees for services rendered before the attorney-client relationship was ended. *Id.* at 35. The Fee Contract also provided that 33 1/3% of any settlement offer made prior to termination of the relationship would be considered reasonable. *Id.*

In anticipation of Plaintiff's executing the proposed General Release to finalize the settlement, Evans Moore had prepared a Settlement Statement listing the full amount of the settlement ($30,000) and reducing that total amount to reimburse for the litigation costs and for attorney fees payable to Evans Moore. The Expenses totaled $6,782.99. Evans Moore charged Plaintiff $3,150 in attorney fees. The Settlement Statement indicated that the attorney fees should be calculated at 40% of the settlement amount (or $12,000) pursuant to the Fee Contract. As a professional courtesy, Evans Moore indicated

it had reduced its fee to 10.5% of the total, ($3,150). After deducting the fees of $3,150 and expenses and costs of $6,782.99, the Settlement Statement indicates the amount of $20,067.01 would be paid to Plaintiff. Settlement Stmt., Ex. provided by Def. at hearing, ECF No. 85 at 1-10; *see also* ECF No. 30-1 at 41-51 (same). The record includes a break down and invoice information when available (Filing Fee, $150.00; Service Fees, $10.00; Deposition Transcripts, $1,882.25; Summit Engineering (for Dr. Brian Durig), $3,354.00; and mediation, $1,386.74). *See* ECF No. 85 at 1-10.

Having considered the terms of the Fee Contract, the provided documentation, and based on the undersigned's knowledge of appropriate contingency-fee amounts for matters of this type, the undersigned finds it appropriate that the Evans Moore Charging Lien of $9,932.99 of the total $30,000 settlement be payable to Evans Moore, LLC.

D.    Midvale's requested sanctions

In Midvale's Motion to Enforce Settlement, it took the position that Plaintiff had violated the terms of the MSA by refusing to sign the proposed General Release and by disclosing the terms of the MSA in public court filings. Mot. Enforce Settlement 2, ECF No. 37 (noting Plaintiff's filing of the MSA in ECF No. 30). Midvale's Motion sought to have the court enforce the settlement by requiring that Plaintiff execute the proposed General Release but to sanction Plaintiff by reducing the amount of the settlement from $30,000 to $15,000. *Id.* at 3.

In a later filing Midvale reiterated its request that Plaintiff be sanctioned for failing to execute the proposed General Release and for disclosing the MSA's terms. Def. Reply in Support of Mot. Enforce Settlement 5, ECF No. 59. Rather than asking that the settlement amount be reduced from $30,000 to $15,000, however, Midvale asks that the court enforce the MSA and its agreed-to terms, including the settlement amount of $30,000. *Id.* Instead, Midvale requests that the court reduce the $30,000 amount by the amount Midvale has incurred to enforce the settlement. *Id.* At the time of filing the Reply, those fees and costs were $3,977. *Id.* Defense counsel advised the $3,977 in fees

represented 23.48 hours "expended in lawyer and paralegal time since the Plaintiff refused to comply with the settlement agreement." *Id.* at 5 & n.2.

At the November 14, 2017 hearing, the court asked counsel for Midvale whether sanctions were still sought. Counsel advised that Midvale does still seek sanctions, but would be willing to accept the amount of fees set out in the October 10, 2017 Reply, rather than update that figure with the additional fees incurred to enforce the settlement. The undersigned finds this award of a portion of the attorney fees Midvale has had to expend to seek to enforce the settlement to be an appropriate award. Midvale's counsel has offered to provide an accounting of the time spent and fees incurred. Based on the undersigned's knowledge of legal fees general charged for this type of case in this District, the undersigned does not find this additional documentation necessary in this instance. *See generally Stultz v. SWS, LLC,* No. 5:12-CV-00516-FL, 2014 WL 5428061, at *1 (E.D.N.C. Oct. 24, 2014) (noting court's "inherent authority to enforce judgment, impose sanctions and award attorneys' fees" in matter concerning enforcement of settlement) (citing *United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 831 (1994)).

III.    Conclusion and recommendation

For the reasons discussed above and for the reasons set out on the record at the November 14, 2017 hearing, the undersigned recommends Defendant's Motion to Enforce Settlement, ECF No. 37, be granted. The terms of the Mediated Settlement Agreement ("MSA") should be enforced in full. If adopted by the Judge Hendricks, Plaintiff will be required to sign the proposed General Release in order to receive her settlement check. Pursuant to the terms of the MSA and the Fee Contract between Plaintiff and Evans Moore, LLC, Evans Moore, LLC is to receive $9,932.99 (for fees of $3,150.00 and costs of $6,782.99). The $9,932.99 is to be deducted from the $30,000 settlement amount paid by Midvale.

In addition, the undersigned recommends Midvale be awarded attorney fees in the amount of $3,977, which are to be deducted from the $30,000 amount.

After the reduction for fees and costs, Plaintiff should receive $16,090.01.

IT IS SO RECOMMENDED.

December 4, 2017                                        Kaymani D. West
Florence, South Carolina                               United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**